IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| James Hartman and Joanne Shank, Co-Administrators of the Estate of Mildred M. Hartman, deceased, and James Hartman and Joanne Shank, in their own right,<br>            Plaintiffs,<br><br>          v.<br><br>Sabor Healthcare Group and Whitestone Healthcare Group, LLC, i/t/a Whitestone Care Center,<br>            Defendants. | Docket No.: 3:14-cv-02167<br>(Magistrate Judge Saporito) |

## MEMORANDUM

This diversity action is brought by James Hartman and Joanne Shank (the "plaintiffs") in their own right and as co-administrators of the Estate of Mildred M. Hartman, deceased, against Saber (incorrectly spelled Sabor) Healthcare Group and Whitestone Healthcare Group, LLC.

The action arises out of the care and treatment received by Mildred M. Hartman (the "decedent") while she was an inpatient at the Whitestone Care Center ("Whitestone") located in Stroudsburg, Monroe County, Pennsylvania. The decedent was a resident of Whitestone from February 12, 2014 through March 7, 2014, after she was released from the Pocono Medical Center. (Doc. 1 ¶ 9). The plaintiffs alleged that while she

was a patient at Whitestone, the defendants failed to give the decedent appropriate medication and prescribed rehabilitation.  As a result, her condition worsened, which ultimately resulted in her death on May 10, 2014, at 67 years of age.  The plaintiffs' complaint consists of six counts: wrongful death, a survival claim, negligence, vicarious liability, corporate negligence, and intentional infliction of emotional distress.  The defendants moved to dismiss the action and to compel arbitration  (Doc. 8) of the plaintiffs' claims pursuant to the terms of a Resident and Facility Arbitration Agreement (the "arbitration agreement"). On September 21, 2015, we deferred our ruling on the issue whether the decedent executed the arbitration agreement pending a jury trial. (Doc. 33). Thereafter, counsel for the parties stipulated that all claims, except those pursued by a wrongful death beneficiary under 42 Pa. C.S.A. §8301(b), be remanded to arbitration. (Doc. 73). We approved the stipulation. (Doc. 74). We scheduled trial to commence on September 26, 2016, on the wrongful death action. (Doc. 78).

Before us is the defendants' motion for summary judgment. (Doc. 131). The motion has been briefed and is now ripe for disposition.

I.   Background

The decedent was a resident of Whitestone from February 12, 2014, through March 7, 2014, after she was released from the Pocono Medical Center. (Doc. 1 ¶ 9; Doc. 131 ¶ 3). As her condition worsened, the decedent was rehospitalized at Pocono Medical Center. (Doc. 1 ¶ 16; Doc. 131 ¶ 10). The plaintiffs aver that while the decedent was a patient at the Whitestone facility, its staff failed to provide her adequate care which included the failure to properly administer her prescribed Lasix from February 20, 2014, to March 5, 2014. (Doc. 1 ¶¶ 17, 25-30; Doc. 131 ¶ 8). Further, the Whitestone staff failed to administer her prescribed Ramipril from March 1, 2014, to March 7, 2014. (Doc. 1 ¶¶ 17; Doc. 131; ¶ 9). The decedent was admitted to Pocono Medical Center on March 7, 2014, with acute chronic congestive heart failure. (Doc. 131 ¶ 10). As a result, she developed swelling, increased fluid, and suffered from congestive heart failure. (Id. ¶ 17.) The plaintiffs claim that the treatment rendered by the Whitestone staff caused her to develop weeping lacerations of her legs, anxiety and panic attacks, physical and emotional injuries, and ultimately heart failure and death. (Id. ¶¶ 18,19, 21).

In their motion for summary judgment, the defendants contend that the plaintiffs' expert witness, Dr. Edward Zurad, opined that the discontinuation of the decedent's Lasix and Ramipril was a cause of her death. (Doc. 131 ¶ 22). In addition, the defendants assert that Dr. Zurad was unable to cite any specific, objective or subjective data or literature as a basis for his opinions concerning causation of the decedent's death. (Id. ¶¶ 23-26). In response, the plaintiffs maintain that the expert witness, Dr. Zurad, has thirty-one years of experience as an attending physician and over 400,000 patient encounter visits. Further, they assert that he thoroughly reviewed the decedent's medical records and formed the opinion that the defendants' admitted negligence increased the decedent's risk of harm, and was a factual cause of her injury which hastened her ultimate demise. (Doc. 145, at 3-4).

II. Legal Standards

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the

outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." Anderson, 477 U.S. at 251–52.

III. Discussion

The plaintiffs bring their claim under Pennsylvania's Wrongful Death Act, 42 Pa. C.S.A. § 8301. Section 8301(b) of the Act provides that

the right of action exists only for the benefit of enumerated relatives. In order to recover in an action for wrongful death, the plaintiff must prove that the death was caused by violence or negligence of the defendant, and therefore, liability for wrongful death requires a determination that a defendant's negligence caused the death. Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061 (Pa. 2006). A wrongful death action does not compensate the decedent, rather it compensates the survivors for damages which they have sustained as a result of the decedent's death. Massey v. Fair Acres Geriatrics Ctr., 881 F. Supp. 2d 663 (E.D. Pa. 2012). Under Pennsylvania law, to demonstrate a prima facie case of medical malpractice, a plaintiff must establish that: (1) the medical practitioner owed a duty to the plaintiff; (2) the practitioner breached that duty; (3) the breach of duty was a proximate cause of, or a substantial factor in, bringing about the harm the plaintiff suffered; and (4) the damages suffered were the direct result of the harm. Montgomery v. S. Philadelphia Med. Grp., 656 A.2d 1385, 1390 (Pa. Super. Ct. 1995); Mitzelfelt v. Kamrin, 584 A.2d 888, 891 (Pa. 1990). In a case such as this one, if a medical practitioner increases a patient's risk of harm by failing to administer prescribed medication in a timely fashion, the plaintiffs must

6

prove that the increased risk of harm is a substantial factor contributing to the death of the decedent. Mitzelfelt, 584 A.2d at 892; see also id. ("[Once there is testimony that there was a failure to detect the cancer in a timely fashion, and such failure increased the risk that the woman would have either a shortened life expectancy or suffered harm, then it is a question for the jury whether they believe, by a preponderance of the evidence, that the acts or omissions of the physician were a substantial factor in bringing about the harm.").

In Mitzelfelt, the plaintiff underwent a surgery after which she developed partial paralysis of all four extremities, was thereafter substantially confined to a wheelchair, and was unable to care for herself. Id. at 890. The issue on appeal—at trial the jury rendered a verdict for the plaintiffs against a defendant doctor—was "what standard of proof is required in medical malpractice cases when there is a percentage of risk that harm would occur, even in the absence of negligence." Id. at 889. The court employed a two-part test. Id. at 894. The first step is to determine whether the medical expert for the plaintiff "could testify to a reasonable degree of medical certainty that the acts or omissions complained of could cause the type of harm that the appellant suffered." Id. Secondly, the

7

court must "determine whether the acts complained of caused the actual harm suffered by the appellant." Id. As to the second part of the test, Pennsylvania courts apply a "relaxed standard," requiring only a finding that the physician's action (or omission) was a substantial factor in causing the injury. Id. In other words, a plaintiff is not required to show, to a reasonable degree of medical certainty, that the acts or omissions of the physician actually caused the harm to the plaintiff. Id.

Whitestone relies upon Mitzelfelt, in support of its position that Dr. Zurad's testimony is insufficient to establish causation under Pennsylvania law. Mitzelfelt was an appeal of a decision after a full trial on the merits. In particular circumstances, summary judgment may be appropriate when a plaintiff is unable to produce an expert to testify that to a "reasonable degree of medical certainty" that the physician's actions were a "substantial factor" in causing the plaintiff harm. See In re Paoli, 35 F.3d at 752. However, this is not one of those cases because Dr. Zurad reaches precisely that conclusion. In his reports and at his deposition, Dr. Zurad clearly opines "to a reasonable degree of medical certainty" that Whitestone's "[n]egligence resulted in an agonizing period of clinical deterioration, increased the intensity of Mrs. Hartman's escalating

8

suffering, abbreviated her life span and resulted in a hastened death." (Doc. 131-5, at 20). Under Mitzelfelt, the plaintiffs have met their burden of proving a prima facie case and are entitled to a trial on the merits. Therefore, Whitestone's motion for summary judgment will be denied.

In their motion for summary judgment, the defendants further contend that the plaintiffs have failed to adduce the requisite expert witness testimony to prove causation because Dr. Zurad's expert opinion testimony is unreliable and thus, inadmissible. It is undisputed that expert testimony is necessary to prove causation in this case. The admissibility of the expert testimony is a question of law governed by Fed. R. Evid. 702 and the Supreme Court's decision in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Daubert imposed a "gatekeeping" role upon district courts, "in order to ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable." Id. at 589 & n.7. Rule 702 provides:

> If a scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data,

9

> (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, there are three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit. United States v. Mathis, 264 F.3d 321, 335 (3d Cir. 2001); Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000).

Here, the defendants posit that the plaintiffs' sole expert witness, Dr. Zurad, is unreliable because he points to no particular medical evidence or peer-reviewed literature in support of his opinions. But a medical expert's failure to cite published, peer-reviewed studies or medical literature does not render his expert opinion unreliable and inadmissible. See Heller v. Shaw Indus., Inc., 167 F.3d 146, 154-56 (3d Cir. 1999). Moreover, the defendants' dissatisfaction with the (lack of) specificity in Dr. Zurad's references to particular medical evidence goes to the proper weight of his testimony, rather than its admissibility. See Voilas v. Gen. Motor Corp., 75 F.Supp 2d 452, 462 (D.N.J. 1999) ("[F]ederal Courts have generally found that the perceived flaws in an expert's testimony often

should be treated as matters properly to be tested in the crucible of the adversarial system, not as the basis for truncating that process.") (internal quotation marks omitted). In any event, we have denied the defendants' motion <u>in</u> <u>limine</u> on the admissibility of Dr. Zurad's expert opinion testimony. (<u>See</u> Doc. 142). Accordingly, as it stands now, the plaintiffs have satisfactorily demonstrated that the evidence presents a sufficient disagreement to require submission of this case to the jury. <u>See</u> <u>Anderson</u>, 477 U.S. at 251-52. The defendants' motion will be denied.

    An appropriate Order follows.

                        ***s/ Joseph F. Saporito, Jr.***
                        JOSEPH F. SAPORITO, JR.
                        United States Magistrate Judge

Dated: September 23, 2016